**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Leisy D.<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>Defendant. | Civil No. 3:26-cv-00303 (MEG)<br><br><br><br><br><br>November 6, 2026 |

**RULING ON PENDING MOTIONS**

Plaintiff, Leisy D.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Title II and/or Title XVI Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits. ECF No. 1. She seeks an order reversing the Commissioner's decision and remanding the case for a new hearing. ECF No. 22. The Commissioner seeks an order affirming the ALJ's decision. ECF No. 30.

For the reasons that follow, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **DENIED (ECF No. 22)** and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED. ECF No. 30.**

[1] Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 2024, Plaintiff filed concurrent applications for a period of disability and SSDI under Title II of the Social Security Act (Act) and for SSI under Title XVI of the Act. R. 15; *see* R. 365-80. Plaintiff alleged disability beginning November 9, 2023, due to the following severe impairments: lumbar degenerative disc disease status post laminectomy, cervicalgia, obesity, depression, and attention deficit hyperactivity disorder (ADHD). R. 17. Her application was denied initially on April 23, 2024 and upon reconsideration on July 16, 2024. R. 15. An administrative hearing was held on December 10, 2024. R. 42-63.

On April 24, 2025, the Administrative Law Judge (ALJ) issued an unfavorable decision. R. 15-36. On January 28, 2026, the Appeals Council denied the request for review, rendering the ALJ's decision the final decision of the Commissioner. R. 1-3. This timely appeal ensued.

ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims, and ALJ Louis Bonsangue's written decision follows that format. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since November 9, 2023, the alleged onset date. R. 17. At Step Two, he found that Plaintiff suffers from the severe impairments of lumbar degenerative disc disease status post laminectomy, cervicalgia, obesity, depression, and attention deficit hyperactivity disorder (ADHD).[2] R. 17. At Step Three, he concluded "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1." R. 18. The ALJ determined she had the residual functional capacity (RFC) to:

---

[2] The ALJ also reviewed the evidence of record and identified migraine headaches as a non-severe impairment. R. 18.

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never crawl or climb ropes/scaffolds/ladders, and can occasionally stoop, kneel, crouch and climb ramps/stars. A cane is also needed for ambulation. In addition, the claimant needs to avoid concentrated exposure to loud noise, and even moderate exposure to machinery with moving parts and unprotected parts. Furthermore, the claimant can perform simple tasks with minor changes to the work routine.[3]

R. 19-20.

At Step Four, the ALJ determined "the claimant is unable to perform any past relevant work." R. 28. Finally, at Step Five, relying on the testimony of a vocational expert (VE), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including an escort vehicle driver, document preparer, and pari-mutual ticket checker. R. 29. Accordingly, the ALJ determined that Plaintiff was not disabled from November 9, 2023, the alleged onset date, through April 24, 2025, the date of the decision. R. 30.

## I. APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v.*

---

[3] Plaintiff's appeal only challenges the ALJ's findings with respect to Plaintiff's mental functioning. ECF No. 22-2 at 5-17. *See Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009) (noting that arguments not raised before the District Court are waived).

*Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id*. At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal citations and quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citations and quotation marks omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay*

*v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference a material legal error has been made. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).

## II. DISCUSSION

Plaintiff argues that the "ALJ committed reversible error in finding only a mild limitation in understanding, remembering, or applying information, because he failed to evaluate Plaintiff's subjective symptom testimony and contradicted the only medical opinions of record without support." ECF No. 22-2 at 10-17.

### A. The ALJ did not err at Step Three.

Plaintiff first argues that the "ALJ committed reversible error by failing to evaluate subjective symptom testimony regarding her mental limitations" when he found that "Plaintiff has only a mild limitation in understanding, remembering, or applying information."[4] ECF No. 22-2 at 10-12; R. 18. The Commissioner argues, and the Court agrees, that even if Plaintiff's position were adopted-that Plaintiff had a "moderate" limitation in understanding, remembering or

[4] Plaintiff does not challenge any other aspect of the ALJ's special technique evaluation, thus limiting the issue to this one "paragraph B" criteria. *See Luz S. v. Comm'r of Soc. Sec.*, No. 3:25-cv-00236 (SVN), 2026 WL 884190, at *1 (D. Conn. Mar. 31, 2026) (limiting scope of review of ALJ decision by "focus[ing] solely on the ground challenged by [p]laintiff").

applying information- it would not result in reversible error at Step Three because none of the section 12.00 Listings would be met. ECF No. 30-1 at 8. For the reasons that follow, I find that the ALJ did not err at Step Three and find the Commissioner's argument persuasive.

At Step Three, the ALJ found that the plaintiff suffered from severe mental impairments of depression and attention deficit hyperactivity disorder (R. 17), obliging him to consider Listings 12.04 and 12.11. "After the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ must perform an analysis referred to in the Regulations as the 'special technique'[.]" *Faison v. Berryhill*, No. 6:16-CV-06055 (MAT), 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017). The "special technique", calls for the ALJ to assess a claimant's functioning in each of four broad functional areas (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself- using a five-point scale: none, mild, moderate, marked, and extreme, with extreme being consistent with a disabling level of functioning. 20 C.F.R. § 404.1520a(c)(3), (4); 20 C.F.R. § 416.920a(c)(3), (4). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990) (emphasis in original); *Kujtim M. v. Kijakazi*, No. 3:21-CV-00205-TOF, 2022 WL 2965621, at *4 (D. Conn. July 27, 2022) (citation omitted) (to meet a Listing, "a claimant must demonstrate that he suffers from all of the listed criteria, no matter how severe any one particular element of the listing may be.").

A "mild" limitation means a "slight" deficit in the ability to perform an activity "independently, appropriately, effectively, and on a sustained basis," whereas a "moderate" limitation simply denotes a "fair" residual ability, without any serious limitation. 20 C.F.R. Pt.

404, Subpt. P, App'x 1, § 12.00(F)(2)(b)(c) (defining "mild limitation" as a "slight limitation" on a claimant's ability to function in the area "independently, appropriately and effectively, and on a sustained basis" and "moderate limitation" as meaning that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"); *see Michael B. v. Comm'r of Soc. Sec.,* No. 3:24-CV-01541 (TOF), 2025 WL 2656290, at *9 (D. Conn. Sept. 17, 2025) ("the ALJ concluded that there is a broad spectrum of "moderate" between "mild" and "marked," and the Plaintiff fell somewhere along that broad spectrum.").

At step three, the ALJ uses the results of the special technique to determine whether the claimant meets or equals one of the § 12.00 Listings. *See id.* Section 12.00 of the Listings features 11 categories of listed mental impairments, most of which are evaluated in a similar manner, including the Listings at issue here, 12.04 and 12.11. *See* Listings § 12.00A; *see* Listings 12.04, 12.11. For these Listings, the criteria of paragraph A and of paragraphs B (or C where applicable) of the particular Listing must be satisfied. *See* Listings § 12.00A. The paragraph A criteria provide the medical criteria required to establish a qualifying disorder. *Id.* § 12.00A.2.a. The paragraph B criteria describe the level of severity required to meet the Listing based on the findings of the special technique—namely extreme limitation in one or marked limitation in two of the four broad functional areas. *Id.* § 12.00A.2.b.[5] *Rocco F. v. Comm'r of Soc. Sec.*, No. 6:21-CV-0015 (DJS), 2022 WL 1597765, at *4 (N.D.N.Y. May 19, 2022) ("Paragraph B requires an extreme limitation in one, or marked limitation in two areas of mental functioning, which include (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself.").

---

[5] Paragraph C, not at issue in this case, provides alternative severity criteria for some Listings. *See* Listings § 12.00A.2.c.

In his decision, the ALJ determined that Plaintiff had a mild limitation in "understanding, remembering or applying information."[6] R. 18. This is the only assessment of a "special technique" functional limitation at issue on appeal. In support of this conclusion, the ALJ noted that Plaintiff stated that "she does not need any special reminders to take care of personal needs and grooming, does not need any reminders to take medicine, [and] does not need to be reminded to go places." R. 18 (citing R. 470, 472 (Function Report)). He further found that the moderate limitation found by the State agency psychological consultants, Dr. Adrian Brown and Dr. Warren Leib, were "inconsistent with the claimant's statements, which support a less severe degree of limitation in this area and were not persuasive." R. 18.

The Commissioner argues that this finding is supported by the evidence of record and that the ALJ provided a sufficient rationale. *Berry v. Schweicker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam) (In deciding whether these standards have been met, the ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment[.]"). The Court agrees. Indeed, the record reflects that the ALJ considered Plaintiff's subjective statements in the Function Report. R. 18 (citing R. 470, 472); *see Dana H. v. Comm'r of Soc. Sec.,* No. 6:20-CV-6592 CJS, 2022 WL 969529, at *9 (W.D.N.Y. Mar. 31, 2022) (finding that the ALJ's reliance on plaintiff's

---

[6] The functional area of understanding, remembering, or applying information is described as follows:

> This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. . . .

Listings § 12.00E.1.

statements in a function report was not erroneous, including that she did not need reminders to maintain personal care, in finding that paragraph C criteria were not met).

But, even if the Court were to find that a "mild" limitation was not warranted, the error was harmless because the record does not support a finding that Plaintiff meets or equals one of the § 12.00 Listings. *Sullivan*, 493 U.S. at 530 (Plaintiff bears the burden of demonstrating that the impairment meets "all of the specified medical criteria."). Here, the ALJ found that Plaintiff had a "mild" limitation interacting with others; a "moderate" limitation concentrating, persisting or maintaining pace; and a "moderate" limitation adapting or managing oneself. R. 18-19. Plaintiff does not challenge these findings. In other words, Plaintiff has not shown an "extreme" limitation in one or "marked" limitation in two of the four broad functional areas to meet listing severity for either depression or ADHD. *Id.* § 12.00A.2.b.

Accordingly, the ALJ did not err at Step Three of the sequential evaluation process finding that Plaintiff did not meet Listings 12.04 or 12.11.

**B. The ALJ Did Not Err at Step Four**

Plaintiff raises essentially the same arguments under Step Four. She argues that the Step Three listing error "independently infects the RFC analysis at steps four and five, which is where Plaintiff's disability claim actually turns." ECF No. 31 at 6. Plaintiff asserts that "an error that does not satisfy a Listing on its own can still require remand if it taints the RFC determination[.]" *Id.* Put differently, Plaintiff contends that the ALJ erred in setting a mental RFC because the ALJ failed to properly address her mental limitation in the "special technique" in the area of "understanding, remembering or applying information." The Court disagrees.

"It is well established that a finding of a certain degree of limitation in an area of mental functioning when engaging in the psychiatric review technique prescribed by the regulations for

assessing the severity of a mental impairment does not require any specific corresponding limitation in the RFC finding." *Zehrid S. v. Comm'r of Soc. Sec.,* No. 6:23-CV-094 (ATB), 2023 WL 5610746, at *6 (N.D.N.Y. Aug. 30, 2023) (citation and internal quotation marks omitted). "ALJs are cautioned that limitations and restrictions from a mental impairment in 'paragraph B' criteria are not an RFC assessment 'but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . the mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment.'" *Burchell v. Colvin*, No. 5:14-CV-0081 (GTS/WBC), 2015 WL 6396065, at *7 (N.D.N.Y. Oct. 21, 2015) (quoting SSR 96–8p, 1996 WL 374184, at *4 (SSA July 2, 1996)). Consistent with this policy, the ALJ specifically noted that the Paragraph B criteria "are not a residual functional capacity assessment. . .[and] the mental residual capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." R. 19. "Caselaw recognizes this and establishes that findings made as part of the [special technique] do not necessarily directly correlate to the RFC." *Wayne B.H. v. Comm'r of Soc. Sec.*, No. 5:24-CV-711 (BKS/DJS), 2025 WL 1330538, at *3 (N.D.N.Y. Mar. 24, 2025), *report and recommendation adopted sub nom. Wayne B. H. v. Dudek*, No. 5:24-CV-0711 (BKS/DJS), 2025 WL 1275847 (N.D.N.Y. May 2, 2025) (citing *Hussain v. Comm'r of Soc. Sec.*, 2023 WL 8189750, at *8 (E.D.N.Y. Nov. 26, 2023) ("'paragraph B' criteria are not necessarily the same as an RFC assessment"); *Whipple v. Astrue*, 479 F. App'x 367, 369 (2d Cir. 2012) (summary order) ("The regulations make clear that those factors are only to be applied in determining the severity of a mental impairment, the third step prescribed by the disability evaluation guidelines, not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps.").

"A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record." *Amanda W. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1647-DB, 2022 WL 3578615, at *4 (W.D.N.Y. Aug. 19, 2022); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.") (internal quotation marks omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Moreover, the ALJ's RFC determination need not perfectly correspond with any of the medical opinions in the record, provided he has weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole. *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (summary order) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). The ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. An "ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record." *Amanda W.*, 2022 WL 3578615, at *4. "Plaintiff bears the ultimate burden of proving that she was disabled throughout the period for which benefits are sought." *Id.*, 2022 WL 3578615, at *9; *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry[.]").

The ALJ did not "arbitrarily substitute his own judgment for competent medical opinion." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998). Rather, the ALJ properly analyzed the opinion evidence and other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. As set forth above, the ALJ considered Plaintiff's own statements regarding her cognitive abilities-that she did not require reminders to care for her grooming or personal needs, take her medication, or go places. R. 18 (citing R. 470, 472).

The ALJ conducted a "detailed assessment" of the record at Step Four. *Burchell*, 2015 WL 6396065, at *7. Specifically, the ALJ considered how Plaintiff's mental health impairments impacted her ability to work. He discussed Plaintiff's statements regarding her symptoms and her daily activities. R. 18. He considered the treatment for her mental health conditions with various providers, R. 21-28, including LCSW McLean, and Dr. Rodriguez, citing to treatment records regarding her mental condition. R. 18-28. He discussed Plaintiff's mental health records at length. R. 22-25. First, he discussed that Plaintiff was receiving mental health counseling from Yessica McLean, a licensed clinical social worker beginning November 9, 2023, the date of her alleged onset of disability. R. 21. The ALJ accurately identified that Ms. McLean's treatment records consistently recorded fair insight, judgment and impulse control, intact memory, good attention/concentration and other unremarkable findings. R. 21-25; R. 25 (noting that although Plaintiff's mood alternated between anxiety and depression her mental status examinations were "otherwise essentially stable."). The mental health treatment records showed stable symptoms with no increase in treatment, medication dosage or changes in medication management. R. 21-25. Next, the ALJ discussed the opinions of the State agency psychological consultants Drs. Leib and Brown. R. 25-28. Based on this review of the record, the ALJ limited Plaintiff to "simple tasks with minor changes in work routine." R. 20.

### *1. Opinion Evidence*

Plaintiff argues that the mental RFC restricting her to "simple tasks with minor changes in work routines" seemingly ignores the instance in the record where the "ALJ's credited limitation (the 2-hour CPP [concentration, persistence, pace] restriction) was properly incorporated" in the RFC. ECF No. 31 at 7. She argues that "the uncredited 2-hour CPP limitation, . . .is not an attempt to relitigate the moderate-versus-mild finding for a different Paragraph B domain." *Id.* at 8. But rather, it is "evidence demonstrating that the ALJ's treatment of the understanding-remembering-applying information domain reflects a broader pattern of accepting medical opinions as persuasive while declining to apply their substance. *Id.* The Court disagrees.

Several medical opinions found that Plaintiff's mental impairments nonetheless permitted her to function in a work environment with certain restrictions, particularly with respect to performing simple tasks. R. 25 (citing R. 110-11 (citing State agency consultant Dr. Warren Leib's mental RFC)); *Id.* at 26 (citing R. 71-72 (State agency consultant Adrian Brown Ph.D.'s mental RFC)); R. 26-28 (treating therapist McLean's Treating Source Statements dated June 2024 and March 2025 and Mental RFC Assessment). Despite finding at the special technique that Plaintiff was "moderately limited" in understanding, remembering or applying information, the State agency consultants found that Plaintiff had the mental RFC to perform work with restrictions.[7]

---

[7] State Agency psychological consultant Dr. Warren Lieb opined that,

> with respect to "understanding and memory capacities and/or limitations" Plaintiff is "able to understand and retain simple directives of 2-3 steps. Secondary to mood [symptoms], clmt will have a difficult time remembering more complex instructions." R. 110 (regarding "understanding and memory capacities and/or limitations"). The doctor also found that Plaintiff was "not significantly limited" in her ability to remember locations and work-like procedures, or to understand and remember very short and simple instructions. *Id.* With respect to "sustained concentration and persistence limitation" Plaintiff "can carry out simple and repetitive tasks with necessary CPP [concentration, persistence and pace] for 2 hr

> periods across a normal work day and work week w/out special supervision." *Id.* at 111. The doctor determined that Plaintiff was "not significantly limited" in her ability to carry out very short and simple instructions, or to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, or to sustain an ordinary routine without special supervision, or to work in coordination with or in proximity to others without being distracted by them, or to make simple work-related decisions. *Id*. With respect to "adaptation limitations" Plaintiff "is able to arrange for transit to work and avoid safety hazards in the workplace. Clmt would not respond well to abrupt, frequent, major changes in routine; however, can adapt adequately to minor changes in work routines." *Id.* The doctor determined that Plaintiff was "not significantly limited" in her ability to be aware of normal hazards and take appropriate precautions, or to travel in unfamiliar places or use public transportation or to set realistic goals or make plans independently of others. *Id.*

State agency psychological consultant Adrian Brown, Ph.D. opined that,

> with respect to "understanding and memory capacities and/or limitations" Plaintiff is "able to understand and retain simple directives of 2-3 steps. Secondary to mood [symptoms], clmt will have a difficult time remembering more complex instructions." R. 71-72. The doctor also found that Plaintiff was "not significantly limited" in her ability to remember locations and work-like procedures, or to understand and remember very short and simple instructions. *Id.* With respect to "sustained concentration and persistence capacities and/or limitations" Plaintiff "can carry out simple and repetitive tasks with necessary CPP [concentration, persistence and pace] for 2 hr periods across a normal work day and work week w/out special supervision." *Id.* at 72. The doctor determined that Plaintiff was "not significantly limited" in her ability to carry out very short and simple instructions, or to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, or to sustain an ordinary routine without special supervision, or to work in coordination with or in proximity to others without being distracted by them, or to make simple work-related decisions. *Id.* With respect to "adaptation capacities and/or limitations" Plaintiff "is able to arrange for transit to work and avoid safety hazards in the workplace. Clmt would not respond well to abrupt, frequent, major changes in routine; however, can adapt adequately to minor changes in work routines." *Id.* The doctor determined that Plaintiff was "not significantly limited" in her ability to be aware of normal hazards and take appropriate precautions, or to travel in unfamiliar places or use public transportation or to set realistic goals or make plans independently of others. *Id.*

These opinions, as well as Ms. McLean's Treatment Source Statement dated March 2025 were considered by the ALJ at Step Four, and the ALJ found the opinions were generally consistent with the medical evidence and were generally persuasive. R. 25-27.

The ALJ also considered the April 5, 2024, Psycho-Diagnostic Interview Report conducted by Ananda Hernandez-Rivera Psy.D. R. 22-23; R. 1697-1701. He summarized Plaintiff's symptoms as reported to Dr. Hernandez-Rivera and set forth in the report. *Id.* He added that "claimant described her mood as tired, but mental status examination was otherwise unremarkable. R. 23. Dr. Hernandez-Rivera's mental status exam stated that: (1) Plaintiff's general appearance was "well kept and well dressed for the meeting." R. 65 (R. 1699); (2) regarding attitude and general behavior, claimant did not have "problems recollecting information pertinent to the interview, related to medical, mental, and situational aspects of life, dates, times, important information and other things." *id.*; (3) mood and affect, was described as "'tired' most of the time.'" However, the examiner noted that "claimant's affect was *not* consistent with expressed mood, with adequate tone of voice, seemed engaged and active throughout the interview process." *id.* (emphasis added); (4) regarding content of thought, the examiner stated that Plaintiff "denied any S.I./H.I., or perceptual disturbances." *id.;* and (5) regarding orientation, "claimant was oriented times three." *Id.* Regarding Plaintiff's ADHD symptoms, the examiner noted that claimant reported having "problems with concentration, attention and focus, since she was a child[.]" R. 1701. "She did, however, finish high school and reported not having any special education help or assistance thorough out her schooling" and ADHD symptoms "has not kept her from obtaining and sustaining employment throughout her adult life." *Id.* Plaintiff's scores on the Montreal Cognitive Assessment indicated "moderate cognitive impairment." *Id.* at 1700-01. As previously stated, there is no indication that Plaintiff received medication to address her ADHD symptoms.

In assessing Ms. McLean's June 2024 Treating Source Statement and July 2024 Mental RFC assessment not persuasive, the ALJ addressed other evidence of record that did not support Ms. McLean's opinion. R. 27 (finding that the June 2024 Treating Source Statement contained "mostly normal examination findings . . . inconsistent with the medical evidence" supporting a "less severe degree of mental limitation particularly in regard to the claimant's ability to maintain attention/concentration."); R. 27-28 (finding that the July 2024, Mental RFC assessment "not supported by her examination findings, and . . . inconsistent with the medical evidence."). The ALJ noted that contemporaneous mental status reports revealed intact memory including full orientation, at least fair insight and judgment, unremarkable thought processes, and unremarkable perception. *See* R. 21-25 (citing 976, 996, 2060, 2066, 2076, 2176, 2184, 2244, 2247, 2259, 2266).

While finding two of Ms. McLean's opinions unpersuasive, the ALJ ultimately concluded that Plaintiff failed to show that she was severely mentally impaired with regard to any of four designated areas: understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace and adapting or managing oneself. R. 18-19. He did find, and incorporated into the mental RFC, that Plaintiff can perform simple tasks with minor changes in work routine. R. 20. "The opinions of examining physicians are not controlling if they are contradicted by substantial evidence, be that conflicting medical evidence or other evidence in the record." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order). Accordingly, I find that the ALJ did not err in assessing the opinion evidence.

### ***2. The Mental RFC is Supported by Substantial Evidence***

Courts have held that simple work RFCs are not inconsistent with moderate functional deficits. *See Crystal M.H. v. Comm'r of Soc. Sec.,* No. 1:23-CV-03142-GRJ, 2024 WL 1962313, at *6 (S.D.N.Y. May 3, 2024) (finding that a mental RFC limited to "understanding and remembering simple instructions" and "dealing with occasional changes in routine work setting"

accounted for mild to moderate impairment in mental functioning); *Andrew R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00102 (CJS), 2023 WL 2445335, at *9 (W.D.N.Y. Mar. 10, 2023) (finding that "even assuming *arguendo* that the ALJ erred by failing to expressly include such limitations in the RFC finding or in the hypothetical to the VE, such error was harmless since the medical evidence indicated that even with such moderate limitations Plaintiff could still perform simple unskilled work."); *Washburn v. Colvin,* 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning . . . ."); *Lisa K. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1867-DB, 2022 WL 2317968, at *9 (W.D.N.Y. June 28, 2022) ("Moderate mental limitations do not indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands of unskilled work.") (citing *Zabala v. Astrue,* 595 F.3d at 410-11 (2d Cir. 2010) (finding plaintiff with no more than moderate mental deficits could perform unskilled past work)); *Rachel D. v. Comm'r of Soc. Sec.*, 573 F. Supp. 3d 892, 901 (W.D.N.Y. 2021) (an ALJ's RFC "which limits Plaintiff to performing simple, routine, repetitive tasks is consistent [with a medical provider's] observation that Plaintiff has moderate limitations for understanding, remembering, and applying complex directions and instructions, and for sustaining concentration and performing tasks at a consistent pace."); *Hintsa N. v. Comm'r of Soc. Sec.*, No. 20-CV-6335-FPG, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021 (finding that a RFC "limited to performing simple, routine tasks accommodates [a medical professional's] finding that plaintiff is moderately limited in concentration, persistence, and pace." (quoting *Arthur M. v. Saul*, No. 6:20-CV-06174-MJR, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021) (collecting cases)).

For instance, the ALJ observed that treatment records show Plaintiff's mood alternates between euthymic, depressed or anxious, fair insight, judgment, and impulse control, intact

memory and good attention and concentration and the remainder of the examination was otherwise unremarkable, functional status intact, or otherwise essentially stable. R. 21-28 (citing R. 974-75; R. 976-77; R. 978-79; R. 984-85; R. 996-97 (Prozac 20 mg prescribed by PCP); R. 2060-62; R. 2066-68; R. 2069-70; R. 2076-78 (McLean noted that she recommended weekly sessions but client was only available to attend bi-weekly due to other medical appointments); R. 2176-77 (reporting she was spending a lot of time entertaining family recently "with more family members coming next week"); R. 2179-80 (noting euthymic mood/"improved mood" "excited about having family members visiting from PR and going on a camping trip"); R. 2184-85 (noting euthymic mood, good insight/judgment/impulse control and reporting client "enjoyed trip to Lake George" "plans to visit family in Florida next week); R. 2187 (euthymic mood); R. 2191-92 (reporting enjoying her vacation with her family out of state)).

In a "To Whom It May Concern Letter" dated March 11, 2024, Ms. McLean attributed some of Plaintiff's "mental health symptoms to be caused by her medical conditions." R. 1609. She added that "Client has *some* difficulty with attention, concentration and impulsivity due to diagnosis of ADHD. However, client reports having been able to complete tasks at work and home. Client's main concern is her physical conditions that are impacting her ability to function independently and therefore increasing her symptoms of depression." *Id.* (emphasis added). These findings are reasonably consistent with mild limitation in understanding, remembering, or applying information.

While Plaintiff received medication management from primary care physician Dr. Alberto Rodriguez for depression, she did not receive medication to treat ADHD symptoms, and his treatment records noted mostly normal mental health findings. R. 1624 (3/9/2023-Dr. Rodriguez noting normal affect); R. 1635-36 (5/22/2023-Dr. Rodriguez performing a depression screening

Plaintiff reported she had not been bothered with the following problems during the last two weeks: "little interest or pleasure in doing things, feeling down, depressed or hopeless." Her initial depression screening score was zero with a total score depression severity of zero); R. 1653-54 (9/20/2023-Dr. Rodriguez noted "patient [became] visibly upset in the office today. She reports that she would like to begin medication for depression. She reported that over the last two weeks she experienced "little interest or pleasure in doing things more than half the days" but did not experience "feeling down, depressed or hopeless" over the same two-week period. The initial depression score was 2 with a total depression severity score of 2); R. 1663 (11/9/2023-Dr. Rodriguez noted "mood and manner are appropriate"); R. 2049 (1/12/2024-Dr. Rodriguez noting "affect is normal and appropriate"); R. 2163 (2/6/2024-Dr. Rodriguez noting normal affect); R. 2153 (3/15/2024-Dr. Rodriguez noting "affect is normal and appropriate"); R. 2135 (5/30/2024-Dr. Rodriguez noting normal affect); R. 2143 (5/10/2024-Dr. Rodriguez noted "seems to be depressed and crying because of her present condition with pain."); R. 2125 (7/1/2024-Dr. Rodriguez noting "affect was normal and appropriate"). It is well-settled that "[t]he substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise.*" *Brault*, 683 F.3d at 448 (emphasis added) (internal quotation marks and citations omitted). In sum, Plaintiff failed to prove limitations beyond those noted in the ALJ's finding.

Therefore, to the extent Plaintiff disagrees with the ALJ's weighing of the evidence, "the deferential standard of review prevents [this Court] from reweighing it." *Krull*, 669 F. App'x at 32. After all, substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ferraro v. Saul*, 806 F. App'x 13, 14 (2d Cir. 2020) (summary order) (quotation marks and citation omitted). Plaintiff's challenge to the ALJ's

determination of her mental impairments amounts to nothing more than disagreement with the ALJ's weighing of the evidence and does not warrant remand. It "is not the function of this Court to re-weigh the evidence or consider *de novo* whether Claimant is disabled." *Traci R. o/b/o E.A.O.B. v. Comm'r Soc. Sec.,* 5:21-cv-00607 (DNH/TWD), 2022 WL 4354367, at *3 (N.D.N.Y. Sept. 20, 2022). "Here, [Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so." *Smith,* 740 F. App'x at 726; *see also Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."). In sum, review of the ALJ's decision demonstrates he appropriately evaluated conflicting evidence and he adequately explained how he resolved those conflicts. "'[A]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'" *Coleman v. Comm'r of Soc. Sec.*, No. 5:14-cv-1139 (GTS/WBC), 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015), *report and recommendation adopted*, 2016 WL 109994 (N.D.N.Y. Jan. 8, 2016) (quoting *LaRock ex rel. M.K. v. Astrue*, No. 10-cv-1019 (NAM/VEB), 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)). The Court is satisfied that the ALJ performed a detailed review of the evidence of record.

Accordingly, the Court finds that the ALJ did not commit legal error and the mental RFC is supported by substantial evidence.

## III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **DENIED (ECF No. 22)**

and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED. ECF No. 30.**

The Clerk of the Court will enter judgment in favor of Defendant.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF No. 29. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge